UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PREFERRED DRILLING
SOLUTIONS, INC.,

      Plaintiff,

v.                                    **Case No: 8:25-cv-806-MSS-CPT**

KEVIN J. BONACUM and
CONNELLY & ASSOCIATES, INC.,

      Defendants.

_____

## ORDER

**THIS CAUSE** comes before the Court pursuant to the Motion to Dismiss Counts I, III, and V of Plaintiff's Amended Complaint ("Bonacum's Motion to Dismiss") of Defendant Kevin J. Bonacum ("Bonacum"), (Dkt. 47), the response in opposition thereto of Plaintiff Preferred Drilling Solutions, Inc. ("PDS"), (Dkt. 70), the Motion to Dismiss ("CAA's Motion to Dismiss," together with Bonacum's Motion to Dismiss, the "Motions to Dismiss") of Defendant Connelly & Associates, Inc. ("CAA"), (Dkt. 49), PDS's response in opposition thereto, (Dkt. 69), Bonacum's Motion for Leave to File Supplemental Answer Asserting Counterclaims Against Preferred Drilling Solutions, Inc. and Dillon Bale ("Bonacum's Motion for Leave"), (Dkt. 109), CAA's Motion for Leave to File Counterclaim Against Preferred Drilling Solutions, Inc. and Third Party Complaint Against Dillon Bale and Shannon Martin

1

("CAA's Motion for Leave," together with Bonacum's Motion for Leave, the "Motions for Leave"), (Dkt. 111), and PDS's corrected response in opposition to the Motions for Leave. (Dkt. 125)  The Court finds that Bonacum's Motion to Dismiss is due to be denied, CAA's Motion to Dismiss is due to be granted in part and denied in part, and the Motions for Leave are due to be granted. Specifically, CAA's Motion to Dismiss is due to be granted insofar as it requests dismissal of PDS's defamation claim (Count VI of the Amended Complaint). The dismissal is with leave for PDS to redress the pleading defects identified in this Order. CAA's Motion to Dismiss is otherwise due to be denied.

## I.    BACKGROUND

PDS filed its initial Complaint on April 1, 2025. (Dkt. 1) PDS filed the operative Amended Complaint on July 8, 2025. (Dkt. 35)

The factual allegations in the Amended Complaint relevant to the Motions to Dismiss concern a former employment relationship between PDS and Bonacum, and Bonacum's employment relationship with CAA. (Id.) PDS alleges that "[f]or nearly twenty five years PDS has provided highly specialized drilling services utilizing multi-million dollar specialty drills throughout the State of Florida and the southeastern United States." (Id. at 3) PDS alleges that "Bonacum was in charge of bidding on projects for PDS." (Id. at 6) According to PDS, "Bonacum was employed by PDS as its Director of Safety and Business Development from December 26, 2016 through March 14, 2024 and as its VP of Operations from March 15, 2024 through March 28, 2025." (Id. at 2) An Employment Agreement dated March 15, 2024 is attached to the

2

Amended Complaint. (Dkt. 35-1) PDS alleges that "[a] material term of the . . . Employment Agreement is that Bonacum would be employed by PDS on a full time basis as Vice President of Operations for three years during which time he would 'perform such duties … as the officers of the company may direct,' 'devote his business activity exclusively to the Company [PDS],' and 'perform and discharge well and faithfully all duties associated with his services.'" (Id. at 4) PDS alleges that "Bonacum also agreed to return all Company business information to PDS upon the termination of his employment." (Id.)

According to PDS, Bonacum had access to PDS's customer list (the "Customer List"), which "resides on a password protected server." (Id.) PDS alleges that "Bonacum was one of only approximately ten officers and managers of PDS given access to the PDS customer list. No other persons inside or outside the company had access to the PDS customer list." (Id.) PDS alleges that the Customer List "distills from a universe of companies who might need specialized drilling services those companies who often contract and pay for such specialized drilling services in PDS's geographic market and then identifies the key persons within those companies necessary to contact to obtain and perform drilling projects and their email addresses." (Id. at 5)

Pertinent to the Motions to Dismiss, PDS alleges in Counts I and V that Defendants are liable for the unauthorized use of the Customer List "and associated confidential customer order history" (the "Trade Secrets"). (Id. at 9-10, 14). PDS also alleges in Count VI that Defendants are liable for Bonacum's defamatory statements

3

made "to PDS employees and customers that PDS was 'in a lot of trouble and probably won't be around much longer[.]'" (Id. at 16) PDS further alleges in Count III that Bonacum is liable for a breach of fiduciary duty as a result of his "soliciting PDS customers and employees on behalf of CAA while still employed by PDS; forwarding requests for quotes from PDS customers to his personal email account and not submitting quotes to the customers on behalf of PDS, and misrepresenting to PDS employees and customers that PDS was 'in a lot of trouble and probably won't be around much longer' so that they would leave PDS and join CAA." (Id. at 12-13)

Bonacum has moved to dismiss Counts I, III, and V of the Amended Complaint pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 47) CAA has moved to dismiss Counts I, V, and VI of the Amended Complaint pursuant to Rules 12(b)(6) and (b)(1). (Dkt. 49)

On July 23, 2025, PDS filed a Motion for Preliminary Injunction, (Dkt. 43), requesting that Defendants be enjoined from using PDS's trade secrets, as set out therein, and that Defendants be ordered to return certain documents to PDS. The Court held a hearing on the Motion for Preliminary Injunction on September 24, 2025. After the hearing, the Court entered a Preliminary Injunction Order (the "Injunction Order"), which set forth the explicit directives of the Court to the parties. (Dkt. 97) The Injunction Order did not serve as an adjudication on the merits and did not find any party entitled to damages.

According to Bonacum, "[a]fter the Injunction Order was entered, Mr. Bonacum and [CAA] were made aware of a statement made by [PDS's] President, Dr.

4

Dillon Bale [("Bale")], that was issued by [PDS] to its customers, vendors, and other third parties declaring that [PDS] had its 'trade secrets and confidential information stolen by another company,' that a 'federal judge found them guilty,' and that 'they have taken 2 million dollars from us.'" (Dkt. 109 at 2-3) The copy of the email Bonacum provided indicates it was sent on October 20, 2025. (Dkt. 109-2 at 2) Bonacum continues, "The email included a copy of the Injunction Order, which clearly identifies Mr. Bonacum and [CAA] as the targets of these false and misleading statements. [PDS] and Dr. Bale doubled down on their inappropriate comments on October 23, 2025, when [PDS] issued a second statement from Dr. Bale stating, among other things, that Mr. Bonacum and [CAA] 'took confidential data, poached key employees, and spread false claims about [PDS's] financial stability.'" (Dkt. 109 at 2-3) CAA alleges that PDS executive Shannon Martin ("Martin") sent the October 20 and 23 statements. (Dkt. 111 at 2-3)

PDS alleges that it sent the October 20 and 23 statements "in response to the Defendants falsely stating to clients and vendors that the Defendants 'won' the motion for preliminary injunction and boasted 'we cannot be stopped.'" (Dkt. 125 at 2) PDS also alleges that "when counsel for Bonacum and [CAA] notified [PDS's] counsel of the two emails complained of . . . they demanded a retraction by October 27, 2025, failing which they threatened to file a counterclaim." (Id.) According to PDS, "[o]n October 27, 2025, [PDS's] counsel sent a retraction email to Defendants' counsel which [PDS] sent to the same persons to whom the emails complained of . . . were sent." (Id.)

In Bonacum's Motion for Leave, (Dkt. 109), Bonacum requests leave to file a counterclaim against PDS and a third party claim against Bale.[1] (Dkt. 109-1) Both counts in Bonacum's proposed supplemental pleading assert a defamation claim premised on the October 20 and 23 statements. (Id.) Count I is directed against PDS; Count II is directed against Bale. (Id.) In CAA's Motion for Leave, (Dkt. 111), CAA requests leave to file a counterclaim against PDS and a third party complaint against Bale and Martin. (Dkt. 110) Count I in CAA's proposed supplemental pleading asserts a claim for injurious falsehood. Count II asserts a claim for tortious interference with an advantageous business relationship. (Id.) Both counts in CAA's proposed supplemental pleading are directed at PDS, Bale, and Martin, and both counts are premised on the October 20 and 23 statements. (Id.)

## II.    LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968-69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual

---

[1] Bonacum refers to the pleading as a "counterclaim" against PDS and Bale, but it is a counterclaim against PDS and a third-party complaint against Bale. See Fed. R. Civ. P. 14(a).

allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S.Ct. at 1964-65). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff.  Quality Foods, 711 F.2d at 994-95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   DISCUSSION

### A.   Motions to Dismiss

#### i.   Breach of Fiduciary Duty (Count III)

The Court first considers the only count challenged in the Motions to Dismiss which is directed at one defendant: Count III, "Breach of Fiduciary Duty (against Defendant Bonacum)." (Dkt. 35 at 12-13)

Bonacum contends that PDS's "fiduciary duty claim is grounded in contractual performance and amounts to no more than a reinvention of the contract action[,]" and, as a result, is barred under Florida's independent tort doctrine. (Dkt. 47 at 6) Bonacum frames the independent tort doctrine as barring a tort claim where the acts complained of are "inextricably intertwined with his performance under the employment agreement[.]" (Dkt. 47 at 5) Indeed, "there must be a tort 'distinguishable

7

from or independent of [the] breach of contract' in order for a party to bring a valid claim in tort based on a breach in a contractual relationship." <u>Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.</u>, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring) (quoting <u>Lewis v. Guthartz</u>, 428 So. 2d 222, 224 (Fla. 1982)).

"[A]n action that breaches a contract may *also* constitute an independent tort if the action breaches an independently-existing tort duty." <u>Simmons v. USI Ins. Servs., LLC</u>, No. 8:23-CV-201-TPB-AAS, 2024 WL 946287, at *3 (M.D. Fla. Mar. 5, 2024); see also <u>Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.</u>, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (denying summary judgment on claims for breach of fiduciary duty based on the independent tort doctrine where fiduciary duty claim was "based on the breach of duties which are not contractually grounded, and therefore, inevitably fall outside the reach of the 'independent tort rule' in any event"). "When an employer entrusts an employee with confidential information or authorizes the employee to negotiate on behalf of the employer, society, that is, public policy, imposes on the employee a duty of loyalty and a fiduciary duty, both of which require scrupulous adherence to avoid the attachment of tort liability." <u>Jabil, Inc. v. Essentium, Inc.</u>, No. 8:19-CV-1567-T-23SPF, 2020 WL 10353824, at *6 (M.D. Fla. May 29, 2020). Thus, notwithstanding that "the parties memorialized their relation (and the concomitant expectations and obligations) in an agreement[,] . . . the [employee's] duties to act prudently and loyally on behalf of, and under the employment of, [the employer] derived not explicitly or initially from the employment-related agreements but rather implicitly and initially from a societally imposed duty to safeguard another's interests

8

and resources, if acting on another's behalf." Id. (distinguishing Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc., 326 F. Supp. 3d 1332, 1346 (M.D. Fla. 2018), aff'd, 10 F.4th 1255 (11th Cir. 2021) (finding no "tort duty" because the duty "derived not implicitly from a source external to the contract but rather explicitly from the contract")). The fact of "[t]he contract's duplication of, or intersection with, societally imposed duties fails to eviscerate [the employer's] tort claims." Id. (citations omitted); accord Acousti Eng'g Co. of Fla. v. Velasco, No. 6:23-CV-424-WWB-EJK, 2024 WL 6881505, at *6 (M.D. Fla. Feb. 9, 2024) ("[T]he employee duty of loyalty is independent of any contractual duty") (citing Jabil, No. 8:19-CV-1567-T-23SPF, 2020 WL 10353824, at *6).

PDS alleges that "Bonacum as a vice president of PDS owed a fiduciary duty of loyalty to PDS." (Dkt. 35 at 12) PDS alleges that Bonacum breached his duty by "soliciting PDS customers and employees on behalf of CAA while still employed by PDS; forwarding requests for quotes from PDS customers to his personal email account and not submitting quotes to the customers on behalf of PDS, and misrepresenting to PDS employees and customers that PDS was 'in a lot of trouble and probably won't be around much longer' so that they would leave PDS and join CAA." (Id. at 12-13) These allegations are "untethered to any specific contractual provision or agreement. … Thus, the independent tort doctrine is not applicable in this context." Mainsail Parent, LLC v. Jewell, No. 24-22875-CIV, 2024 WL 6964671, at *3 (S.D. Fla. Nov. 6, 2024). That the Employment Agreement states that Bonacum must "devote his business activity exclusively to [PDS]," and "perform and discharge

well and faithfully all duties associated with his services[,]" (Dkt. 35-1), does not

"eviscerate" the tort claim notwithstanding "[t]he contract's duplication of, or

intersection with, societally imposed duties[.]" <u>Jabil</u>, No. 8:19-CV-1567-T-23SPF,

2020 WL 10353824, at *6.

Bonacum also contends that insofar as the breach of fiduciary duty claim is

premised on Bonacum's alleged misrepresentation to PDS employees and customers

"that PDS was 'in a lot of trouble and probably won't be around much longer[,]'"

(Dkt. 35 at 13), the claim is impermissibly duplicative of PDS's defamation count

under Florida's single publication rule (which case law refers to interchangeably as the

single action rule). (Dkt. 47 at 7-8)

The single action rule does not require dismissal of the breach of fiduciary duty

claim. While courts remain "deeply divided about the correct application of the single

action rule," there is persuasive authority for the position that "the single action rule

only bars a tort claim premised on a defamatory statement when a defamation claim

has failed." <u>Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.</u>, 773 F. Supp. 3d 1304,

1314 n.4, 1316 (M.D. Fla. 2025) (Mizelle, J.) (observing that "[t]he Florida Supreme

Court has not addressed the scope of the [single action] rule in this context where the

tort claim arises solely from the same publication as the defamation claim that has not

yet failed[,]" and holding that "where a defendant has not successfully invoked an

affirmative defense to defamation, the single action rule presents no bar to a plaintiff's

10

tortious interference claim premised on the same publication").[2] Here, Bonacum's

Motion to Dismiss does not request dismissal of the defamation claim, and Bonacum

has not offered an affirmative defense to it. PDS's defamation claim has not otherwise

"failed" as against Bonacum (though, as discussed below, the defamation count is due

to be dismissed because of a pleading defect). The single action rule does not apply.

Moreover, the fiduciary duty count is premised on the allegation that Bonacum

"solicit[ed] PDS customers and employees on behalf of CAA while still employed by

PDS," and independent facts incorporated into the breach of fiduciary duty count

support this claim. Accordingly, the single publication rule does not require dismissal

of the breach of fiduciary duty insofar as it is based on a theory that that Bonacum

breached his duty of loyalty by redirecting PDS's employees and customers to CAA

by misrepresenting to PDS employees and customers "that PDS was 'in a lot of trouble

and probably won't be around much longer.'" (Id. at 13)

### ii.    Defamation (Count VI)

PDS premises its defamation claim on its allegation that Bonacum published a

false statement, "that PDS was 'in a lot of trouble and probably won't be around much

longer[,]'" (Dkt. 35 at 16), to PDS's customers and employees as part of his efforts

---

[2] "Although the cases speak to a 'failed defamation claim,' . . . this phrase references instances
when the defendant successfully invoked a defense to defamation." Emergency Recovery,
773 F. Supp. 3d at 1318 n.10 (quoting Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.,
831 So. 2d 204, 208 (Fla. 4th DCA 2002)). But see Tymar Distribution LLC v. Mitchell Grp.
USA, LLC, 558 F. Supp. 3d 1275, 1287 (S.D. Fla. 2021) ("The underpinnings of the single-
action rule make clear that it does not matter whether the defamation claim fails, succeeds,
or is not brought at all").

with CAA to persuade PDS's customers and employees to leave PDS and do business with CAA. CAA contends that PDS's defamation claim fails as to CAA because PDS "is unable to establish the first element as there is no allegation that [CAA] published the purportedly false statement." (Dkt. 49 at 15); see also Nassau v. Unimotocyclists Soc'y of Am., Inc., 59 F. Supp. 2d 1233, 1242 (M.D. Fla. 1999) ("To state a cause of action for defamation in Florida, the plaintiff must establish that: (1) the defendant published a false statement; (2) the false statement was about the Plaintiff; (3) the false statement was published to a third party; and (4) the falsity of the statement caused injury to the plaintiff") (citing Valencia v. Citibank Int'l, 728 So. 2d 330, (Fla. 3d DCA 1999). Under Florida law,

> a corporation may be held liable for its employees' defamation. Schreidell v. Shoter, 500 So. 2d 228, 232 (Fla. 3d DCA 1986); see also Hooper-Holmes Bureau v. Bunn, 161 F.2d 102, 104-05 (5th Cir. 1947). However, "[t]he liability of the master for intentional acts which constitute legal wrongs can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do." Dieas v. Assocs. Loan Co., 99 So. 2d 279, 281 (Fla. 1957) (quotations omitted) (emphasis removed); see also Thompson v. Orange Lake Country Club, Inc., 224 F. Supp. 2d 1368, 1377 (M.D. Fla. 2002).

Tillett v. BJ's Wholesale Club, Inc., No. 3:09-CV-1095-J-34MCR, 2010 WL 11507322, at *3 (M.D. Fla. July 30, 2010).

CAA contends "[PDS] has [improperly] lumped [CAA] into a defamation claim concerning alleged statements made by Bonacum, not statements made by [CAA]. It appears that [PDS] is attempting to allege that [CAA] is vicariously liable

12

for Bonacum's allegedly defamatory statements. However, this theory of liability is not properly plead[ed]." (Dkt. 49 at 15) In its response to CAA's Motion to Dismiss, PDS does not dispute CAA's assertion that PDS's defamation claim against CAA is based on a vicarious liability theory. (Cf. Dkt. 69 at 10 (PDS asserting that "[CAA's] Motion [to Dismiss] reveals that [CAA] understands that it must defend against the defamatory statements made by Bonacum as part of his recruitment efforts for [CAA].")) While the Amended Complaint does not expressly state that Bonacum made his misrepresentation while acting within the scope of his agency for CAA, the allegation is set forth in the Amended Complaint. (See Dkt. 35 at 6 ("Bonacum left PDS to become the branch manager for CAA[,] managing its newly created Tampa branch"); id. at 6-7 (alleging that "prior to and after March 14, 2025[,]" the date Bonacum informed PDS that he was resigning from PDS, Bonacum made various false statements to PDS customers and employees to coax them to take their business to CAA, and "Bonacum and CAA are continuing their efforts to poach PDS employees to join CAA."); id. at 9 ("All of the CAA customers are former PDS customers and half of CAA's employees are former PDS employees. Bonacum and CAA could not have gotten to this point so quickly without Bonacum soliciting and securing customers and employees for CAA while he was still employed by PDS."))

    "A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both." Yusko v. NCL (Bahamas), Ltd., 4 F.4th 1164, 1170 (11th Cir. 2021). But a plaintiff cannot plead both theories in the same count. See Hagle v. Royal Caribbean Cruises Ltd., No. 22-23186-

CV, 2023 WL 3571292, at \*6 (S.D. Fla. May 2, 2023), report and recommendation adopted, No. 22-23186-CV, 2023 WL 3568130 (S.D. Fla. May 19, 2023) ("While Plaintiff can travel under a theory of direct liability, vicarious liability, or both for a given claim, they are not the same cause of action. Rather, they are distinct theories of liability, and to assert both in one count is impermissible shotgun pleading."); Liles v. Carnival Corp. & PLC, No. 22-CV-22977, 2023 WL 34644, at \*3 (S.D. Fla. Jan. 4, 2023) (dismissing count in part because "a claim for direct liability should be brought in a separate count"); see also Rodriguez v. Rambosk, No. 2:23-CV-1102-SPC-DNF, 2026 WL 575098, at \*2 (M.D. Fla. Mar. 2, 2026) (observing that the "[p]laintiff improperly alleged these vicarious liability claims in the same count as his direct claims[,]" but "the Court disregard[s] this defect[]" because the "[d]efendants never moved to dismiss the claims on this basis, and they do not address the issue in their summary judgment briefing."). Accordingly, the Amended Complaint must be dismissed because it improperly asserts both vicarious and direct theories of liability in the same count. To proceed, PDS must cure this pleading defect.

### iii.    Misappropriation of Trade Secrets (Counts I and V)

Defendants contend that the claims for misappropriation of trade secrets under federal law (Count I) and Florida law (Count V) are inadequately pleaded. (Dkts. 47; 49) CAA also contends that the Court lacks jurisdiction over any remaining claims because the DTSA cause of action is the only cause of action in the Amended

Complaint that arises under federal law.[3] (Dkt. 49 at 2, 9)

PDS and Defendants do not dispute that the federal law and Florida law misappropriation claims may be analyzed together. (Dkts. 49 at 9; 69 at 7; see also Dkt. 47 at 2-5 (analyzing misappropriation claims together)) Indeed, "DTSA[4] and FUTSA[5] can be analyzed together." Freedom Med., Inc. v. Sewpersaud, 469 F. Supp. 3d 1269, 1275 n.6 (M.D. Fla. 2020), order clarified, No. 6:20-CV-771-ORL-37GJK, 2020 WL 3487642 (M.D. Fla. June 25, 2020). A trade secret misappropriation claim requires the plaintiff to demonstrate that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." RxStrategies, Inc. v. CVS Pharmacy, Inc., 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019). To state a DTSA claim, the plaintiff must demonstrate further that "the misappropriated trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." WWMAP, LLC v. Birth Your Way Midwifery, 711 F. Supp. 3d 1313, 1319 (N.D. Fla. 2024) (citing 18 U.S.C. § 1836(b)(1)). To properly plead misappropriation of trade secrets, a "plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the

---

[3] The Court does not further address CAA's jurisdictional argument because the Court finds that the misappropriation claims are adequately pleaded.

[4] Defendant Trade Secrets Act, 18 U.S.C. § 1836, et seq.

[5] Florida Uniform Trade Secrets Act, Florida Statue § 688.001 et seq.

material it claims constituted a trade secret." Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018) (quoting DynCorp Int'l v. AAR Airlift Group, Inc., 664 F. App'x. 844, 848 (11th Cir. 2016) (per curiam)[6]).

"Under Florida law, customer lists are generally considered trade secrets provided: (1) the list was acquired or compiled through the industry of the owner of the list and is not just a compilation of information commonly available to the public; and (2) the owner shows that it has taken reasonable efforts to maintain the secrecy of the information." Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018) (quoting Digital Assurance Certification, LLC v. Pendolino, No. 6:17-CV-72-ORL-31TBS, 2017 WL 320830, at *2 (M.D. Fla. Jan. 23, 2017)). And "under Florida law, where an employee acquires trade secret information during the course of [his] employment, the employee is under a duty, even in the absence of an express contractual provision, not to disclose that information in [his] new employment for [his] own or another's benefit to the detriment of [his] previous employer." Marlite, Inc. v. Eckenrod, Case No. 09-22607-CIV, 2011 WL 39130 at *7 (S.D. Fla. Jan. 5, 2011) (citing Premier Lab Supply, Inc. v. Chemplex Indus., Inc., 10 So. 3d 202, 206 (Fla. 4th DCA 2009); Southeastern Mech. Servs., Inc. v. Brody, No. 8:08–CV–1151–T–30EAJ, 2008 WL 4613046, at *10 (M.D. Fla. Oct.15, 2008)).

The Amended Complaint identifies PDS's alleged trade secrets as "PDS's

---

[6] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

customer list and associated confidential customer order history." (Dkt. 35 at 9-10, 14) Trade Secrets derive economic value from not being ascertainable by competitors and the general public who could use this information to poach customers and adopt PDS's business strategies. See New Country Motor Cars of Palm Beach, LLC v. Beresford, No. 17-80856-CIV, 2019 WL 3890456, at *7 (S.D. Fla. May 3, 2019) (customer list and sales charts detailing every sale constitutes trade secret); Sethscot Collection, Inc. v. Drbul, 669 So. 2d 1076, 1078 (Fla. 3d DCA 1996) (active customer list which also contains a detailed purchasing history constitutes trade secret). Accordingly, dismissal is not due to be granted on the basis that the Trade Secrets do not hold independent economic value.

PDS alleges that it took reasonable steps to protect the secrecy of the alleged trade secrets by, among other things, "maintaining the Trade Secrets on a password protected server, [and] providing confidential password access to only ten of PDS's 88 employees on a need to know basis." (Dkt. 35 at 10, 15) Defendants contend in their Motions to Dismiss that PDS should have employed additional measures to protect the privacy of the Trade Secrets. (See Dkts. 47 at 3; 49 at 5-6) The Court finds that the resolution of this disputed matter is more properly resolved at the summary judgment stage of the proceedings, after the completion of discovery. Cf. Flagstone Island Gardens, L.L.C v. Ser, Case No. 11-21865-CIV-GRAHAM/GOODMAN, 2011 WL 13223685 at *5 (S.D. Fla. Sept. 13, 2011) (plaintiff pleaded claim under FUTSA where alleged its trade secrets "were stored on Plaintiff's computer network, which requires a username and password to gain access."); Treco Intern, S.A. v. Kromka, 706 F.

Supp. 2d 1283, 1287 (S.D. Fla. 2010) (allegation that plaintiffs, among other things, "carefully limited dissemination of the information only to those trusted employees and others who needed to know" supports that plaintiffs took reasonable steps to protect the information). As such, the Motions to Dismiss are due to be denied insofar as they premise dismissal of the misappropriation claims on the insufficiency or sufficiency of the measures employed to maintain the secrecy of the Trade Secrets.

The Amended Complaint adequately alleges that Bonacum and CAA unlawfully used and disclosed the Trade Secrets. According to PDS, "Bonacum opened and manages CAA's new Tampa branch, competing with PDS and providing drilling services to many of PDS's former customers." (Dkt. 35 at 2) PDS alleges that "Bonacum . . . disclosed the Trade Secrets to CAA." (Id. at 15) PDS also alleges that "Bonacum unlawfully used and is continuing to use the Trade Secrets on behalf of and as an agent of CAA to unfairly compete with PDS . . . ." (Id.) PDS alleges that "Bonacum downloaded the PDS Schedule Calendar and the PDS customer list to use in his employment with CAA as its Tampa branch manager." (Id. at 8) At this stage of the proceedings the allegations sufficiently put Defendants on notice of PDS's theory that Bonacum, on behalf of CAA, relied on the Trade Secrets to convert PDS customers into CAA customers. Whether Bonacum actually used or disclosed the Trade Secrets to CAA, and whether CAA knew or had reason to know that that the Trade Secrets were derived from or through a person who owed a duty to PDS to maintain the secrecy of the Trade Secrets, see 18 U.S.C. § 1839(5); Fla. Stat. § 688.002(2), are issues more properly resolved at the summary judgment stage.

CAA also contends that the DTSA claim is due to be dismissed because "Plaintiff has failed to plead any relevant facts claiming that the alleged trade secrets will be used in interstate or foreign commerce." (Dkt. 49 at 8-9) "To state a claim for misappropriation of trade secrets pursuant to the [DTSA], a plaintiff generally must allege . . . [that] the misappropriated trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." WWMAP, 711 F. Supp. 3d at 1319 (citing 18 U.S.C. § 1836(b)(1)). PDS alleges that it "provides environmental drilling, sonic drilling, direct push sampling and remediation services throughout Florida *and the southeastern United States . . . .*" (Dkt. 35 at 1 (emphasis added)) The Trade Secrets are related to these drilling services because the Trade Secrets "narrow the universe of potential customers for specialized drilling services to those who have contracted with PDS and are likely to need such services again, and . . . [t]he customer contact information identifies the key persons to contact to successfully bid for new projects and to coordinate performance of the drilling work." (Dkt. 35 at 10, 14) Accordingly, a requisite interstate commerce connection is alleged. Accord WWMAP, 711 F. Supp. 3d at 1324; KOVA Com. of Naples, LLC v. Sabin, No. 2:23-CV-614-JES-KCD, 2024 WL 2019872, at *2 (M.D. Fla. May 7, 2024).

CAA contends that the FUTSA claim is preempted by the DTSA claim. (Dkt. 49 at 14) However, "[e]xcept as provided in section 1833(b)," the DTSA "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by . . . State . . . law for the misappropriation of a trade secret . . . ." 18 U.S.C. § 1838. The statutory exception does not apply. Cf. 18 U.S.C. § 1833(b) (immunity

19

from liability for confidential disclosure of a trade secret to the government or in a court filing). Accordingly, the FUTSA claim is not due to be dismissed as preempted. See also Compulife Software, Inc. v. Newman, 111 F.4th 1147, 1160 (11th Cir. 2024), cert. denied sub nom. Rutstein v. Compulife Software, Inc., 145 S. Ct. 1172, 221 L. Ed. 2d 253 (2025) (observing in a case in which the plaintiff brought claims under the DTSA and FUTSA that "[a] plaintiff in Florida can sue a defendant who steals his trade secret under both federal and Florida law.").

### B.    Motions for Leave

The Motions for Leave request the filing of supplemental pleadings concerning PDS's October 20 and 23 statements. The October 20 and 23 statements were published months after the Court's August 22, 2025 deadline for motions to add parties or to amend pleadings, as set forth in the Case Management and Scheduling Order ("CMSO"). (Dkt. 54 at 1)

A CMSO deadline "may be modified only for good cause . . . ." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa v. Airport Sys., Inc., 133 F. 3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). The proposed supplemental pleadings are directed at alleged tortious conduct that  occurred after the deadline elapsed. Defendants cannot be faulted for not moving for leave to file supplemental pleadings before the deadline elapsed.

Bonacum's Motion for Leave was filed on November 12, 2025, and CAA's

Motion for Leave was filed on November 17, 2025. (Dkts. 109; 111) The Court discerns no undue delay, bad faith, dilatory motive, or undue prejudice associated with the filing of the Motions for Leave. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1340 (11th Cir. 2014) ("Under Rule 15(a)(2), courts should freely give leave to amend the pleadings 'when justice so requires.' A court may consider several factors when deciding whether to grant a motion to amend, including 'undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'") (quoting Fed. R. Civ. P. 15(a)(2); Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009)).

PDS contends that the Motions for Leave should be denied because the new causes of action and third party defendants would "unnecessarily inject new factual and legal issues into this case and unnecessarily complicate the case, after substantial discovery has occurred." (Dkt. 125 at 3) It is true that the supplemental pleadings do not concern the same nucleus of core facts that underlie the Amended Complaint. Nonetheless, the Court is confident that with proper instructions a jury will not confuse the issues or become unduly prejudiced against any party. And it is true that discovery has progressed since this case was filed about a year ago. But the addition of third party defendants and new factual issues stemming from the October 20 and 23 statements does not appear to jeopardize this case's progression. The Court is confident that an appropriate extension of remaining pretrial deadlines can accommodate the addition

of these new parties and issues without meaningfully risking a delay which might materially reduce the availability of evidence and witnesses' memories.

PDS contends that the Motions for Leave should be denied because "PDS sent the retraction email as requested and has not further communicated to third parties about the order on the motion for preliminary injunction." (Dkt. 125 at 3) PDS marshals no case law standing for the proposition that its publishing of a retraction letter defeats a cause of action premised on the retracted statement, as PDS appears to contend.

PDS contends that the Motions for Leave should be denied as futile because the supplemental pleadings Defendants seek leave to file would fail to state a claim. (Dkt. 125 at 4-5) According to PDS, Defendants' claims fail because PDS's statements "are not false." (Id. at 5) The allegations concerning the October 20 and 23 statements do not establish that Defendants cannot state a claim against PDS and the third party defendants. The factual issue of the truth or falsity of PDS's statements is not properly determined at this juncture. PDS also contends that CAA's claim against Martin would be futile because "she simply transmitted a message from Dillon Bale and . . . the content was not made by Ms. Martin." (Id.) PDS cites no case law suggesting that a person cannot be liable for "transmitting" to third parties a misrepresentation initially made by another person. Accordingly, the Motions for Leave are due to be granted.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** that:

1.     Bonacum's Motion to Dismiss, (Dkts. 47), is **DENIED**.

2.     CAA's Motion to Dismiss, (Dkts. 49), is **GRANTED in part** and **DENIED in part**. CAA's Motion to Dismiss is **GRANTED** insofar as it requests dismissal of PDS's defamation claim (Count VI of the Amended Complaint) on the basis that the Defamation count asserts both vicarious and direct theories of liability in the same count. CAA's Motion to Dismiss is otherwise **DENIED**.

3.     PDS shall file, within **twenty-one (21) days** of the date of this Order, a Second Amended Complaint that addresses the pleading defects identified in this Order. Defendants shall file an answer or response to the Second Amended Complaint within **twenty-one (21) days** of the date the Second Amended Complaint is filed and served on Defendants.

4.     The Motions for Leave, (Dkts. 109; 111), are **GRANTED**.

5.     Bonacum and CAA shall separately file on the docket their respective supplemental pleadings within **seven (7) days** of the date of this Order. PDS shall file an answer or other response to the counterclaims asserted in the supplemental pleadings within **twenty-one (21) days** of the date each supplemental pleading is filed in accordance with this Order. Bonacum and CAA shall cause summonses to be issued and Bonacum and CAA shall serve the third-party defendants in accordance with the Federal Rules of Civil Procedure.

6.    The Parties may file, within **fourteen (14) days** of the date the last of the third-party defendants appears or fails to file a timely answer or other response in this action, a paper proposing revisions to the deadlines set in the Case Management and Scheduling Order, (Dkt. 54), including a deadline for a second mediation involving the third-party defendants, if appropriate.

7.    This case is **STAYED** until the last of the third-party defendants appears or fails to file a timely answer or other response.

8.    CAA's proposed supplemental pleading, (Dkt. 110), which CAA separately filed on the docket without leave of court, is **STRICKEN** from the docket.

**DONE** and **ORDERED** in Tampa, Florida on this 19th day of March 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies to:**
Counsel of record
Any unrepresented party